UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| COMERLIS DELANEY,<br><br>　　　　　　Plaintiff,<br>　v.<br>SIMPLEXGRINNELL L.P.,<br>　　　　　　Defendant.<br>_____/ | No. CV10-05103 MEJ<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 40)** |

## I. INTRODUCTION

On October 12, 2010, Plaintiff Comerlis Delaney filed a complaint in Alameda County Superior Court against his former employer, Defendant SimplexGrinnell LP. Dkt. No. 1, Ex. A. Plaintiff alleged that Defendant violated the California Fair Employment and Housing Act (FEHA), the Family Medical Leave Act (FMLA), the California Family Rights Act (CFRA), and public policy when it terminated his employment in retaliation for him taking a medical leave of absence. *Id*. Defendant removed the lawsuit to this Court and now moves for summary judgment on each of Plaintiff's causes of action. Dkt. No. 40. For the reasons explained below, Defendant's motion is GRANTED in its entirety.[1]

---

[1] Defendant first moved for summary judgment on October 7, 2011, and a hearing was held on December 1. At the hearing, the parties conceded that they had applied the wrong legal standard to Plaintiff's FMLA and CFRA claims. Based on this, the Court denied Defendant's motion without prejudice and set a briefing schedule for the parties if Defendant wished to refile a dispositive motion incorporating the correct legal standard. Defendant refiled its motion for summary judgment on December 15. Dkt. No. 40. Plaintiff filed a revised opposition, to which Defendant filed a reply. Dkt. Nos. 47 and 50. Having reviewed the papers submitted by the parties and considered the arguments of counsel from the December 1 hearing, the Court finds that this matter is suitable for resolution without holding a second hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b).

## II. BACKGROUND

Defendant, which designs, engineers, and installs fire and security systems throughout North America, hired Plaintiff as a technician in January 2006.[2] JSF ¶¶ D1-2. Plaintiff received good performance reviews for his work in 2007 and 2008, and he was awarded merit-based pay increases for both years. JSF ¶¶ P16-24. Defendant noted in Plaintiff's reviews that he was an "exceptional team member" who had a "peerless" work ethic and an ability to handle multiple projects. JSF ¶¶ P16-20.

In 2009, however, Jarrod Porter (Plaintiff's manager) became concerned that Plaintiff was no longer performing at an acceptable level. JSF ¶ D12. Porter was particularly troubled with Plaintiff's failure to submit timely and accurate daily reports, which were an important aspect of Defendant's business. JSF ¶¶ D14-15. Plaintiff received multiple e-mails from his supervisors that specifically criticized his daily reports and advised him that they needed to be filled out properly. *See, e.g.*, JSF ¶¶ D18, D20-22. Some of these e-mails conveyed informal warnings to Plaintiff, such as: (1) "If we can't do this, we're going to have big issues."; (2) "THIS IS CRITICAL!"; (3) "This is an old story and it had better be getting corrected!"; and (4) "Also, not the proper naming protocol . . . . [l]ast warning." JSF ¶¶ D20, D26, D27. Plaintiff was further reprimanded for submitting inaccurate time records and not properly cleaning his worksite. *See, e.g.*, JSF ¶¶ D10, D13, D19, D25. Defendant, however, did not issue a formal written warning to Plaintiff at this time. *See* JSF ¶ P5.

On January 25, 2010, Plaintiff received his performance review for 2009. JSF ¶¶ D28-29. Plaintiff earned a "C-Below; 2 Meets" ranking — a below average ranking and the lowest performance review given to any technician managed by Porter. JSF ¶ D29. Porter wrote the following in Plaintiff's review:

> Paperwork has been another area of concern and I would like to work with him in the upcoming year to improve the overall quality of the reports that we receive from him

---

[2] Except where otherwise noted, these background facts are based on the parties' joint statement of undisputed material facts (JSF). Dkt. No. 42. The parties were able to agree on each material fact submitted to the Court and have not proposed any separate facts.

in the field. Comerilis has always performed a large volume of work, however I would like to see him take some additional time reviewing his scope of work and the more technical aspects of his projects to ensure that he is able to complete a clean, professional installation every time under minimal supervision.

JSF ¶ D28. Two days after receiving his review, Plaintiff — for the first time — requested a medical leave of absence due to stress and anxiety. JSF ¶¶ D3-4. This request was granted by Defendant's third-party administrator, and Plaintiff was placed on disability leave effective on January 28. JSF ¶ D3. Defendant never believed that Plaintiff was lying about his medical condition or that he did not have a legitimate reason for taking a leave of absence. JSF ¶ P64.

Plaintiff returned from his leave of absence on April 12, 2010. JSF ¶ D3. Porter immediately had issues with Plaintiff's performance and admonished him by e-mail on April 15 and May 3 for once again submitting incomplete daily reports. JSF ¶¶ D36-37. On May 18, Porter met with Plaintiff and issued him a formal written warning. JSF ¶ D38. The warning identified several problems with Plaintiff's performance, such as the inaccurate daily reports, his failure to be available for work while he was supposed to be on-call, and issues that had developed about some of his recent work in the field. JSF ¶¶ D38-41. The written warning was to be in effect for 90 days during which Plaintiff was "expected to immediately establish and sustain a satisfactory record." Dkt. No. 49, Pl.'s Decl., Ex. D.

Over the next three months, Porter continued to have issues with Plaintiff's performance. *See, e.g.,* JSF ¶¶ D42-49. Porter sent numerous e-mails to Plaintiff admonishing him for problems with his daily reports and time cards. *Id.* After consulting with Human Resources and other executives, Porter concluded that Plaintiff's performance was unacceptable. JSF ¶ D79. On August 13, Plaintiff was notified that his employment would be terminated effective August 16. JSF ¶ D2. Porter cited the following reasons for the termination: (1) Plaintiff filed an expense report for expenses that he did not incur; (2) Plaintiff submitted a time card for hours that he had not worked; and (3) Plaintiff continued to submit incorrect and late paperwork after repeated warnings. JSF ¶ D79. About two months after his termination, Defendant filed this lawsuit.

3

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears both the initial burden of production as well as the ultimate burden of persuasion to demonstrate that no genuine dispute of material fact remains. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations and citations omitted). On summary judgment, courts are required to view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### IV. DISCUSSION

Defendant has moved for summary judgment on all three causes of action alleged by Plaintiff: (1) retaliation in violation of FEHA; (2) retaliation in violation of FMLA/CFRA; and (3) wrongful termination in violation of public policy.[3] Dkt. No. 1, Ex. A. Each of these causes of action are based on the same set of operative facts, which stem from Plaintiff's claim that he was terminated because he took a medical leave of absence for his disability. *Id.*

**A. FEHA Claim**

FEHA forbids employers from retaliating against employees who have engaged in a protected activity under the statute. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1035 (2005) (citing Cal. Gov't Code. § 12940(h)). Both parties agree that the three-stage burden-shifting

---

[3] Defendant's motion presupposes that Plaintiff's FEHA claim is based on a theory of disability discrimination rather than retaliation. Plaintiff's complaint and his opposition, however, only discuss his FEHA claim in terms of retaliation. Accordingly, the Court only addresses the retaliation claims raised as part of Plaintiff's allegations.

1 analysis set forth in *McDonnell Douglas Corporation v. Green* applies to Plaintiff's FEHA claim.
2 411 U.S. 792, 802 (1973); *Yanowitz*, 36 Cal.4th at 1042 (invoking the *McDonnell Douglas* test to
3 evaluate the defendant's motion for summary judgment on a retaliation cause of action under
4 FEHA). Accordingly, Plaintiff bears the initial burden of making out a prima facie case against
5 Defendant by showing that: (1) he engaged in a protected activity; (2) Defendant subjected him to an
6 adverse employment action; and (3) a causal link exists between the protected activity and the
7 employment action. *Yanowitz*, 36 Cal.4th at 1042. If Plaintiff establishes a prima facie case, the
8 burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its
9 decision to terminate Plaintiff. *McDonnell Douglas*, 411 U.S. at 802. Once Defendant rebuts the
10 inference of retaliation, Plaintiff must show that the articulated reason for the termination is a pretext
11 or cover-up for unlawful retaliation. *Id.* Plaintiff can establish pretext in two ways: (1) directly, by
12 showing that unlawful retaliation is what more likely motived Defendant to terminate him; or (2)
13 indirectly, by showing that Defendant's proffered explanation lacks credibility since it is internally
14 inconsistent or otherwise unbelievable. *Chuang v. Univ. of Calif. Davis, Bd. of Trs.*, 225 F.3d 1115,
15 1127 (9th Cir. 2000).

16 For the purposes of this motion, Defendant initially concedes that Plaintiff can establish a
17 prima facie case under *McDonnell Douglas*. Defendant then points to a considerable amount of
18 evidence that shows its decision to terminate Plaintiff had nothing to do with his medical leave of
19 absence and was only based on his unsatisfactory performance. In his opposition, Plaintiff does not
20 dispute that Defendant has met its burden to produce legitimate, nondiscriminatory reasons for his
21 dismissal. Instead, Plaintiff raises various arguments in an attempt to establish that Defendant's
22 proffered reasons for the termination are pretextual. Thus, the only question before the Court on
23 Plaintiff's FEHA claim is whether he has raised a triable issue at the third stage of the *McDonnell*
24 *Douglas* analysis.[4] As explained below, Plaintiff has failed to show that a genuine dispute exists

---

[4] In his opposition, Plaintiff sums up the issue before the Court as follows: "Since Plaintiff does not dispute the alleged legitimacy of reasons for Plaintiff's termination, the summary adjudication of this claim again turns on the existence of pretext." Dkt. No. 47 at 5.

with respect to this issue of pretext.

Plaintiff first contends that a rational juror could find evidence of pretext in Defendant's decision to terminate him before the expiration of his 90-day probation period. This does not persuade the Court. Plaintiff's 90-day probation period began when he received his formal warning on May 18, 2010. JSF ¶ D38. Even though he was notified that he would be terminated on Friday, August 13 (87 days later), Plaintiff's termination was not effective until the following Monday, August 16 (90 days later). JSF ¶ D2. Accordingly, there is no basis to Plaintiff's argument.

There is also no merit to Plaintiff's contention that the denial of his vacation request is evidence of discriminatory animus. After returning from medical leave in April 2010, Plaintiff asked his supervisor if he could use his vacation time from June 3 to June 11. JSF ¶ D53. Porter responded with the following e-mail:

> I'm not sure that I can approve your vacation request. You were just out for a couple of months and this request is for June, which is one of our busiest months and also a month that several others have already requested. I'll get with Tami next week and review the schedule and tech needs - is there any possibility you can move this back?

Dkt. No. 44, Lee Decl., Ex. C. Porter explained that he only cited Plaintiff's leave of absence because he believed that it resulted in Plaintiff not having accrued enough vacation time for his request. JSF ¶ D59. Porter later asked Human Resources about the amount of vacation time accrued by Plaintiff, and it was confirmed to be insufficient. JSF ¶ D60. Ultimately, Plaintiff was permitted to take the requested time off on an unpaid basis. JSF ¶ D61. Because Defendant eventually allowed Plaintiff to go on vacation and has provided legitimate reasons for initially contemplating his vacation request, there is no evidence of discriminatory animus behind Porter's response.

In Plaintiff's next argument, he contends that Defendant subjected him to much greater scrutiny after he returned from his medical leave of absence. The undisputed facts, however, do not support this. Before Plaintiff went on medical leave, Defendant sent him almost 20 critical e-mails admonishing his work performance. *See* JSF ¶¶ D10-29. These e-mails included the following warnings: (1) "If we can't do this, we're going to have big issues."; (2) "THIS IS CRITICAL!"; (3) "This is an old story and it had better be getting corrected!"; and (4) "Also, not the proper naming

6

1  protocol . . . . [l]ast warning." JSF ¶¶ D20, D26, D27.  Additionally, Defendant provided Plaintiff
2  with his 2009 annual review that ranked him as a below average technician and noted that he needed
3  to improve his paperwork.  JSF ¶¶ D28-29.  It was only after Plaintiff received this negative
4  feedback that he made his first request for a medical leave of absence, which was immediately
5  granted by Defendant.  JSF ¶¶ D3-4.

6        Plaintiff is correct that Defendant continued to have issues with his performance after he
7  returned from medical leave.  But, as the countless warnings outlined in the preceding paragraph
8  show, this was not out of the blue; rather, the scrutiny followed a familiar pattern established the
9  year before when Defendant first began having problems at work.  Moreover, Defendant has
10 provided a legitimate reason for its criticism: Plaintiff continued to perform poorly after he returned
11 from his leave of absence.  For instance, just three days after his medical leave ended, Plaintiff was
12 reprimanded for submitting an incomplete daily report.  JSF ¶ D36.  About two weeks later, Porter
13 admonished Plaintiff once again for submitting a daily report that used an improper naming
14 convention and failed to include the amount of hours worked, a job number, and a signature.  JSF ¶
15 D37.  Even after Plaintiff was formally warned and placed on probation — at which time he was
16 instructed to immediately establish and sustain a satisfactory record — he does not dispute that he
17 continued to make mistakes at work and this naturally led to further criticism.  *See* JSF ¶¶ D42-49.
18 Defendant's proffered reasons for allegedly scrutinizing Plaintiff were therefore legitimate and no
19 persuasive evidence has been presented to the contrary.[5]

20       Plaintiff further argues that because he was disciplined differently than other employees, a
21 rational juror could conclude that this is evidence of pretext.  According to Plaintiff, other
22 employees received second and third formal warnings before being terminated.  In addition,

---

[5] Plaintiff correctly points out that he received good performance reviews for his work in 2007 and 2008.  This, however, does not insulate Plaintiff from being fired, particularly where he began having problems with his work performance in 2009 and these issues were not corrected over a one-year period.  *See Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998) ("Rose-Maston's prior evaluations, however, are not sufficient to defeat LMC's motion for summary judgment.  These evaluations may show that Rose-Maston had performed competently in the past, but they do not render her more recent negative evaluation inherently untrustworthy.").

7

1  Defendant had never previously dismissed anybody else for submitting improper daily reports.
2  Defendant, however, provides another legitimate, nondiscriminatory reason for this discrepancy
3  between Plaintiff and others: no other technician had performed as poorly as him. Plaintiff concedes
4  this point, admitting that while there were a few other technicians who had occasional problems with
5  their reports, none of these rose to the level of Plaintiff's issues, and the other technicians eventually
6  corrected their problems, unlike Plaintiff. JSF ¶ D78. Plaintiff was also not dismissed solely
7  because of his continued inability to file timely and accurate daily reports. He was terminated for
8  submitting fraudulent expense reports and time cards as well. JSF ¶ D79. Plaintiff was therefore an
9  at-will employee who had a history of performance problems that continued to deteriorate even
10 though he was on probation. Under these circumstances, Plaintiff has not shown that Defendant's
11 decision to terminate him without an additional formal warning was retaliatory and not for the
12 legitimate reasons it has provided.
13       Plaintiff then complains about Defendant's decision to not issue its first formal warning to
14 Plaintiff until after he returned from medical leave. Essentially, Plaintiff argues that because
15 Defendant tolerated his unsatisfactory performance in 2009 without a formal warning, its decision to
16 finally issue a formal warning about a month after he came back from leave is evidence of pretext.
17 The Court disagrees. When Plaintiff first began performing poorly, Porter was hopeful that these
18 issues could be corrected through his usual practice of providing guidance to the employee. *See* JSF
19 ¶ D30. As Plaintiff's performance continued to deteriorate, Porter considered issuing a formal
20 warning. *Id.* But he decided that a formal warning would be counter-productive, particularly
21 because Plaintiff had informed Defendant that he was involved in a stressful child custody dispute.
22 *Id.* Porter instead continued to admonish Plaintiff in the hopes that this would improve the quality
23 of Plaintiff's work. *Id.* He also made a point to identify Plaintiff's unsatisfactory performance in
24 the 2009 annual review. JSF ¶¶ D28-29. Porter's next step would have likely been to issue a formal
25 warning to Plaintiff, but it was at this time that Plaintiff went on medical leave. After Plaintiff
26 returned to work and continued to have the same issues with his performance, Porter finally issued a
27 formal warning to him. The Court finds nothing troubling about Porter's progressive approach to
28

8

reprimanding Plaintiff, especially since there was no requirement for Defendant to have a specific discipline policy for its at-will employees.

Plaintiff devotes a significant portion of his opposition and overall argument to the theory that the temporal proximity between his return from medical leave and Defendant's adverse employment action could lead a rational juror to find pretext. While a suspiciously short time-frame between a protected activity and an adverse employment action may help establish pretext under federal law, California courts have explicitly held that temporal proximity under FEHA will only satisfy Plaintiff's initial burden to establish a prima facie case. *See Arteaga v. Brink's, Inc.*, 163 Cal.App.4th 327, 353 (2008). Once Defendant proffered legitimate, nondiscriminatory reasons for terminating Plaintiff — as Plaintiff concedes it did — then proximity in time cannot alone establish pretext. *Id.*; *see also Loggins v. Kaiser Permanente Intern.*, 151 Cal.App.4th 1102, 1112 (2007) ("temporal proximity, although sufficient to shift the burden to the employer to articulate a nondiscriminatory reason for the adverse employment action, does not, without more, suffice also to satisfy the secondary burden borne by the employee to show a triable issue of fact on whether the employer's articulated reason was untrue and pretextual").

Thus, contrary to Plaintiff's argument, he needs other evidence besides temporal proximity to establish a genuine dispute with respect to the issue of pretext. And the evidence presented by Plaintiff in his opposition, which was evaluated by the Court above, does not suffice. That evidence was merely speculation on the part of Plaintiff that his termination was retaliatory; it did not meet the requirement that "circumstantial evidence of pretext must be specific and substantial in order to survive summary judgment." *Bergene v. Salt River Project Agr. Imp. and Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001).

The Court finds the *Arteaga* case particularly instructive to this matter. *Arteaga* specifically explained why California courts are hesitant to allow temporal proximity, by itself, to be sufficient proof of pretext. 163 Cal.App.4th at 354. If this were permitted, an "employee, fearing that his job is on the line, [could] raise an old wound as a preemptive strike to escape appropriate discipline or discharge." *Id.* Furthermore, an employer who wanted to remove a poorly performing employee

9

would be prevented from doing so "simply because the employee recently engaged in a protected activity." *Id.* (internal quotations and citations omitted). Applying this rationale, the *Arteaga* Court went on to find that the employee's temporal proximity argument and other evidence were not enough to withstand summary judgment on the pretext issue. *Id. Arteaga* stressed that its reasoning was particularly applicable to situations "where the employer raised questions about the employee's performance before he disclosed his symptoms, and the subsequent termination was based on those performance issues." *Id.* at 353.

This is analogous to the situation presented by Plaintiff in his lawsuit. He was also having problems at work before disclosing his symptoms, and Defendant's post-leave decision to terminate him for his deteriorating performance should not be second-guessed unless there is evidence of pretext. Having considered Plaintiff's arguments and reviewed the record, the Court finds that Plaintiff has failed to show a genuine dispute on this issue of pretext. Accordingly, Defendant's motion for summary judgment on Plaintiff's FEHA claim is GRANTED.

**B. FMLA/CFRA Claim**

Both the FMLA and CFRA prohibit employers from retaliating against employees for exercising their right to take a medical leave of absence. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003) (explaining that both statutes guarantee that taking a medical leave "will not result in a loss of job security or in other adverse employment actions").[6] Unlike his FEHA claim, Plaintiff's FMLA claim is not subject to the burden-shifting analysis of *McDonnell Douglas*. *Id.* at 1136. Rather, both parties agree that for Plaintiff to prevail on this claim he only needs to show that his medical leave of absence constituted a "negative factor" in Defendant's decision to terminate his

---

[6] Because the CFRA adopts the language of the FMLA, courts hold that the same legal standard applies to both claims. The Court therefore analyzes both claims under the same standard and jointly refers to them as the FMLA claim. *Xin Liu*, 347 F.3d at 1136 (citing *Moreau v. Air France*, 2002 WL 500779, at *1 (N.D. Cal. Mar. 25, 2002) (discussing only the FMLA claim because it and the CFRA claim are "substantively identical")).

employment.[7] *Id.*

As the Court explained in detail above, Plaintiff has not shown that his termination was caused by anything other than his poor performance. To avoid this same conclusion on his FMLA claim, Plaintiff only offers one additional argument in his opposition. He contends that his lawsuit is analogous to the *Xin Liu* matter, where the employee was found to have raised a triable issue on her FMLA claim because: (1) her termination was largely based on her supervisor's subjective performance review; (2) there was evidence that her supervisor was upset about her taking a leave of absence; and (3) her leave and termination were closely related in time. *Id.* at 1137.

*Xin Liu*, however, is factually distinguishable from Plaintiff's case. Unlike the employee in *Xin Liu* — who was evaluated by her supervisor after returning from her leave of absence — Plaintiff received his poor performance review before he requested to take a medical leave. Thus, even though Plaintiff's 2009 annual review was based on some subjective elements, it is irrelevant because it has no connection to his subsequent leave of absence. Moreover, the employee in *Xin Liu* established a causal link between her leave and termination by presenting evidence that her supervisor did not want to extend her leave of absence because this would require him to perform her job duties. *See id.* at 1130. Here, Defendant immediately granted Plaintiff's request for medical leave, and there is no evidence that Defendant was upset or exhibited any other discriminatory animus based on this leave. Plaintiff's FMLA claim consequently relies on only speculative evidence of retaliation and the temporal proximity between his medical leave and termination. For the same reasons this evidence was not enough to withstand summary judgment on his FEHA claim, the Court finds that it is also not sufficient here. Defendant's motion is therefore GRANTED on Plaintiff's FMLA and CFRA claims.

**C. Wrongful Termination Claim**

Lastly, Defendant moves for summary judgment on Plaintiff's third cause of action for

---

[7] Plaintiff clarifies in his opposition that he is only challenging Defendant's decision to terminate him. He is not alleging that Defendant is liable for not providing him with a medical leave of absence.

UNITED STATES DISTRICT COURT
For the Northern District of California

wrongful termination in violation of public policy. The alleged violation of public policy is predicated solely on Plaintiff's underlying FEHA, FMLA, and CFRA claims.[8] Because the Court has granted summary judgment on these underlying claims, Defendant's motion is also GRANTED with respect to Plaintiff's wrongful termination cause of action.

### V. CONCLUSION

Based on the reasons above, Defendant's motion for summary judgment is GRANTED in its entirety.

**IT IS SO ORDERED.**

Dated: February 13, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge

---

[8] Plaintiff's opposition does not even address his wrongful termination cause of action. Dkt. No. 47 at 3-14.